UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSVALDO MALDONADO,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | No. 2:21-cv-00644 CKD SS<br><br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively. The parties have consented to magistrate judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1971, served on active duty in the U.S. Marine Corps from 1990-1998 and in the California National Guard from 2003-2013. Administrative Transcript ("AT") 565, 595, 988, 1084, 1099. While in the National Guard, plaintiff deployed to Iraq and Kuwait, where

he dealt with casualties and injuries in his work. AT 1084, 1768. He was honorably discharged from the Marines in 1998 and from the National Guard in 2016. AT 1084. In October 2010, plaintiff was diagnosed with combat-related posttraumatic stress disorder (PTSD). Veteran's Administration (VA) records show a history of treatment for PTSD symptoms since that time. AT 569, 1084.

Plaintiff applied on December 14, 2016 for DIB and SSI, alleging disability beginning January 7, 2013. AT 215-228, 277. Plaintiff alleged he was unable to work due to difficulty seeing, sleep apnea, back spasms, PTSD, sleep deprivation, anxiety disorder, arthritis in both knees, torn meniscus in right knee, ringing in ears, and depression. AT 277. After Administrative Law Judge (ALJ) Sara Gillis issued an unfavorable decision on February 3, 2017, plaintiff appealed in federal court, and on September 14, 2018, the district court found that the ALJ erred and remanded the case for further administrative proceedings. AT 17-37, 1219-29. On remand, ALJ Christopher Knowdell issued a second unfavorable decision on March 26, 2019. AT 1073, 1242-78. Plaintiff appealed that decision, and the Appeals Council remanded the case to the ALJ for further administrative proceedings. AT 1073, 1281-86. In a third decision dated December 10, 2020, at issue here, ALJ Knowdell again determined that plaintiff was not disabled.[1] AT 1073-1101.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt.

The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2022.
>
> 2. The claimant has not engaged in substantial gainful activity since January 7, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: post-traumatic stress disorder, depressive disorder, degenerative joint disease bilateral knees status post arthroscopy surgeries, and degenerative disc disease of the back.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work in that he can lift and carry, push and pull twenty pounds occasionally and ten pounds frequently, sit for six hours of an eight hour day, except he can stand and walk for four hours of an eight hour day; can occasionally climb, kneel, crouch, balance, stoop and crawl; and he must avoid concentrated exposure to noise above a moderate level and vibration.  He can understand, remember and apply simple instructions; is capable of maintaining concentration, persistence and pace for simple repetitive tasks; can have no interactions with the public; is capable of occasional interactions with co-workers, but no tandem team tasks and no tasks involving use of firearms or weapons.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1971, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 8. The claimant has at least a high-school education.

---

> 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

> 9. Transferability of job skills is not material to the determination to disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2]
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from January 7, 2013 through the date of this decision.

AT 1076-1101.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinion evidence; (2) the ALJ erred in finding that plaintiff could perform a range of light work; and (3) the ALJ's erred in rejecting plaintiff's subjective symptom testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

---

[2] The ALJ relied on vocational expert (VE) testimony to find that someone with plaintiff's age, education, work experience, and residual functional capacity (RFC) would be able to perform the requirements of representative light unskilled jobs such as sub-assembler, inspector, and bagger. AT 1100.

1      The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
2  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
3  conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
4  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
5  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
6  administrative findings, or if there is conflicting evidence supporting a finding of either disability
7  or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
8  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
9  weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).
10 ANALYSIS
11      A. Mental Health Opinions
12      Plaintiff asserts that the ALJ erred in discounting, in whole or in part, the assessments of
13 three physicians who opined on plaintiff's mental functioning: examining physician Dr. McCray
14 and treating physicians Dr. Matto and Dr. Ardalan. Plaintiff argues that the ALJ's weighing of
15 these opinions "reflects his basic misunderstanding of PTSD" such that his conclusions are not
16 supported by substantial evidence.
17      For applications filed before March 27, 2017[3], the weight given to medical opinions
18 depends in part on whether they are proffered by treating, examining, or non-examining
19 professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is
20 given to the opinion of a treating professional, who has a greater opportunity to know and observe
21 the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).
22      To evaluate whether an ALJ properly rejected a medical opinion, in addition to
23 considering its source, the court considers whether (1) contradictory opinions are in the record,
24 and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
25 treating or examining medical professional only for "clear and convincing" reasons. Lester, 81

---

[3] For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017).

F.3d at 831.

In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, the ALJ evaluated seven medical opinions concerning plaintiff's mental health and functionality. In formulating the mental RFC, the ALJ accorded substantial weight to the opinions of two state agency non-examining physicians, Dr. J. Schnitzler and Dr. Lon Olsen, who reviewed plaintiff's medical history in 2015 and 2016, respectively, and opined that plaintiff could perform simple repetitive tasks with limited public contact. AT 1095.

The ALJ also gave substantial weight to the opinions of consulting examiners Dr. Lenore Tate and Dr. Wendy McCray, "which support each other in finding that, despite the symptoms and limitations of claimant's impairments, there is still significant ability to engage in working tasks." AT 1094-1095. However, the ALJ discounted a portion of Dr. McCray's opinion, as set forth below.

**Dr. McCray**

Dr. McCray, who evaluated plaintiff on October 6, 2017, noted that he was "pleasant and engaging throughout the assessment." AT 1768. Plaintiff reported that relatives and friends had told him that, since his return from military service, he had changed into "an aggressive, angry person." AT 1768. He reported that he was currently struggling and planned to return to the VA to participate in a treatment program. AT 1769. He was very sensitive to noise, felt vigilant in

crowds, never sat in a restaurant with his back to the door, and avoided the news because he felt triggered by recent events. AT 1769. He reported that he had an exaggerated startle response and slept in his own room, apart from his wife. AT 1979. He experienced nightmares, flashbacks, and feelings of detachment and irritability. AT 1769. Dr. McCray noted that plaintiff's hands were clenched at one point during the exam, and he explained that he felt "triggered," but "[h]e calmed himself down." AT 1770. He stated that he enjoyed big projects such as working on cars and drawing. AT 1770.

Dr. McCray noted that plaintiff had last worked in March 2017 as a Human Resource Sergeant, a position he held since 2005. AT 1769. He had retired due to PTSD and problems with his knees and back. AT 1769. Dr. McCray further noted that plaintiff was

> studying network security through Heald Institute when the school was 'shut down.' [He] began taking a class at the Art Institute; however he discontinued, feeling the program was not a good fit for him. Most recently, [he] has been taking real estate classes . . . He stated that he started strong; however, he began to experience feelings of anxiety and stress . . . [and] ultimately failed his classes.

AT 1769.

After evaluating plaintiff, Dr. McCray diagnosed PTSD and opined that he was markedly impaired in his ability to relate to others, including co-workers, supervisory personnel, and the general public. AT 1771. She opined that his ability to perform multi-step and higher level cognitive tasks was unimpaired, as was his "ability to maintain his attention and concentration for simple one- and two-step tasks." AT 1771.

As noted above, the ALJ accorded most of Dr. McCray's opinion substantial weight, as it suggested "significant capacity to engage in working tasks" despite some mental impairment. AT 1096. The ALJ stated that the opinion was supported by "limited findings of abnormalities upon mental exam, the general improvement and good control of symptoms shown in the longitudinal record of treatment when taking psychiatric medications with multiple modalities of psychotherapy, self-help methods the claimant uses, as well as the rather ordinary range of daily

////

activities of daily living reported, and the findings in the NCO evaluations."[4] AT 1095; see AT 1085-86 (discussion of "recurrent objective findings [as to] mental presentation and status showing he generally presents within normal with few abnormalities"); 1086-87 (discussion of evidence of medication adherence and improvement with treatment and self-help methods); 1087-88 (discussion of reported activities of daily living).

The ALJ discounted one aspect of Dr. McCray's opinion, however:

> Little weight is accorded to Dr. McCray's opinion that the claimant faced marked impairments in interacting with supervisors, co-workers and the public. The objective findings upon mental status examinations showing limited findings of abnormalities and only occasional increases during times of situational stressors does not support this extreme limitation. The claimant's evident capacity to raise multiple children, engage in working activities, interact with friends and family, participate in military duties and attend college with no significant episodes of out of control behaviors also does not support this facet of Dr. McCray's opinion.

AT 1095; see AT 1085-86 (discussion of "greater symptoms" brought on by situational stressors); 1087-88 (discussion of activities of daily living).

Plaintiff argues that the ALJ "largely focused on evidence that showed few abnormalities in his cognition, thought process and content," reflecting a "basic misunderstanding of PTSD." Plaintiff asserts that the ALJ's failure to find that plaintiff was limited in his ability to interact with supervisors was prejudicial error.[5] However, the ALJ cited multiple factors in his evaluation of the mental opinion evidence, and his assessment did not heavily rely on plaintiff's normal cognitive/mental exams. The ALJ noted significant evidence of improvement and

---

[4] Earlier in the decision, the ALJ noted: "The record includes evidence that the claimant passed NCO Evaluations covering periods of time from March 2013-March 2014, March 2015-2016. These evaluations noted the claimant created useful spreadsheets, developed and provided trainings, possessed extensive knowledge from previous deployments, and shared it in trainings." AT 1079, citing AT 1042-47. The NCO evaluations documented that plaintiff was respectful, displayed maturity, showed self-control under pressure, mentored soldiers underneath him, and could perform his duties well, including fostering an environment of dignity at respect. AT 1042-47.

[5] The mental RFC provided for no interactions with the public and only occasional interactions with co-workers, such that the RFC's greatest inconsistency with Dr. McCray's opinion was its lack of limits on interaction with a supervisor.

symptom control in the longitudinal record, citing a detailed summary of this evidence. See, e.g., AT 1086 (noting that plaintiff's treating therapist found "a reduced need for frequent check-ins as he was demonstrating a high comfort level using therapeutic modes on his own"). See Warre v. Comm'r, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled with treatments are not disabling). The ALJ also noted that plaintiff had "no significant episodes of out of control behaviors" despite engaging in a range of family interactions, work activities, military duties, and college-level education. During the relevant period, while plaintiff had PTSD-related difficulties in work and family life, he also helped a friend with construction jobs and flipping houses, attended classes in graphic and web design at the Art Institute, studied network security at the Heald Institute until the school closed, and was considering taking auto mechanics classes. AT 573, 580, 1087, 1292, 1769. He also was employed part-time doing administrative work for the California National Guard and worked as a stocker for Wal-Mart. AT 1293, 960, 1090. The ALJ considered "evidence that he has insubordination issues" and difficulties with work relationships[6], but also weighed the NCO reports that plaintiff was respectful, mature, showed self-control, and performed all duties to standard over a multi-year period. AT 1088. See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224-25 (9th Cir. 2010) (ALJ properly discounted plaintiff's assertion that he could not tolerate "most people" and thus was unable to work, when doctors found him cooperative and pleasant, he reported that he had developed the ability to control his anger, others had confidence in him to perform tasks at a ranch, and he "adequately dealt" with people while obtaining supplies).

Plaintiff seeks a different assessment of the opinion evidence, leading to the conclusion that plaintiff was too volatile to interact with a work supervisor. However, the ALJ gave specific and legitimate reasons for discounting this facet of Dr. McCray's opinion, supported by enough

---

[6] In June 2012, for example, plaintiff reported missing work because of conflicts with his supervisor and had thoughts of harming her because he felt he was being treated unfairly. AT 468-472. In November 2012, he was suspended from work for five days because of difficulty controlling his temper. AT 429. In January 2013, he was terminated from his full-time job in the National Guard due to issues with his supervisor. AT 425. In October 2015, while working at a restaurant, plaintiff got in an argument with his supervisor in which he used foul language and physically moved the supervisor out of his way. AT 746-47, 52.

record evidence to meet the substantial evidence threshold.  See Batson v. Comm'r of Soc. Sec., 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").

**Dr. Matto and Dr. Ardalan**

The ALJ also considered the mental opinions of two VA doctors: evaluating psychiatrists Dr. Mikel Matto and Dr. Shahram Ardalan.  AT 1096-1097.

On January 9, 2016, Dr. Matto, a psychiatrist with the California Army National Guard, evaluated plaintiff, as he had done annually since 2014.  AT 979-90.  Dr. Matto noted that plaintiff "is already participating in evidence-based modalities and appears willing to continue but his symptoms have not improved . . . given his current environment and continued exacerbation of his PTSD symptoms, he will likely see no improvement."  AT 980 (ellipses in original).

Nine months later, on October 3, 2016, Dr. Ardalan, a psychologist, performed a Compensation and Pension (C&R) examination and diagnosed plaintiff with PTSD.  AT 979, 1014-24.  On a checkbox form, Dr. Ardalan opined that plaintiff had "occupational and social impairment with deficiencies in most areas."  AT 1015.  Dr. Ardalan listed plaintiff's symptoms as chronic sleep impairment; disturbances of motivation and mood; difficulty establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; inability to establish effective relationships; and impaired impulse control, such as unprovoked irritability and periods of violence.  AT 1022.

The ALJ found these two opinions "not well supported, and less persuasive than those of" the five other doctors who had opined on plaintiff's mental issues.  AT 1099.  Specifically, the ALJ found them inconsistent with (1) the opinions of consultative examiners Dr. Tate and Dr. McCray; (2) "the medical records as a whole as reviewed in detail above"; (3) "multiple NCO evaluations the claimant passed 2013-2016"; (4) Dr. Tate's and Dr. McCray's examination findings "showing he presented [as] pleasant, engaging, once tensing up, but able to calm himself down" and that he could sustain concentration and attention; (5) plaintiff's "college level studies" and work on his cars; (6) evidence of improvement in "repeated mental status examinations," including those subsequent to Dr. Matto's 2016 evaluation, and (7) self-reported improvement in

managing his symptoms. AT 1098. The ALJ wrote:

> The records overall evidence a capacity to explore, apply for, and actively take part in multiple educational endeavors, manage medical treatment, appointments, multiple medications and therapy with no significant evidence of out of control behavior, conflicts with staff and providers or other inappropriate speech or behaviors, with[out] any episodes of decompensation but for one he testified to most recently [concerning an altercation about leaving a weapon in his car while parked on campus].

AT 1098. "This evidence of improvement and range of activities . . . supports [the other medical opinions] that his symptoms are at most moderate in nature." AT 1098. The ALJ noted that "there are no specific details in Dr. Matto's opinion to suggest that the claimant would be unable to perform simple repetitive tasks . . . [or] that a simple civilian environment with limited interactions would be an issue." AT 1098-99.

Here as above, the ALJ provided specific and legitimate reasons for not granting controlling weight to these opinions, which were contradicted by the non-examining physicians' opinions that plaintiff could perform simple repetitive tasks with no public contact. The ALJ cited to lengthy summaries of record evidence of plaintiff's improvement with medication and treatment, development of greater self-control, college classes, work activities, and hobbies. After two previous decisions on plaintiff's 2016 application, seven doctors' opinions on mental functionality, a voluminous medical record, and multiple hearings, no further development of the record was required. The court finds no error as to the weighing of the medical opinions on mental health.

B. Light Work

Turning to the physical RFC, plaintiff claims the ALJ erred in finding he could perform a range of light work over the relevant seven-year period: January 2013 to December 2020.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant

11

evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Plaintiff cites a recent case, Smith v. Kijakazi, 14 F.4th 1108, 1109 (9th Cir. 2021), in which the Ninth Circuit held that "the ALJ did not adequately consider how [the claimant's] symptoms changed over time" when assessing credibility and the medical opinions. In Smith, the ALJ gave controlling weight to the opinion of a psychologist who testified after reviewing five years of treatment records, and discounted the opinions of two doctors who examined Smith years earlier. The Court held that the ALJ erred by "failing to consider whether the opinions of [the examining doctors] were reliable evidence of Smith's functioning in that earlier period and instead seeking only a single medical opinion of Smith's general capacity over the entire period." 14 F.4th at 1115-16.

In the instant case, plaintiff argues that the ALJ erred under Smith by relying on the opinion of Dr. Harvey Alpern, who testified at plaintiff's third hearing in November 2020. AT 1159-1165. Dr. Alpern reviewed plaintiff's records and in 2020 and opined that he could perform light work but could stand/walk for four hours. AT 1093, 1160. The ALJ discounted some aspects of Dr. Alpern's opinion, but credited part of it as follows:

> [G]iven the record of treatment for back pain, and bilateral knee surgeries with residual symptoms, the undersigned accords greater weight to the findings of Dr. Schwartz[7] and medical expert Dr. Alpern, that claimant be limited to stand and walk for four hours of an eight-hour day. Dr. Schwartz's findings, based on examination of the claimant, are consistent with that of Dr. Alpern who reviewed the entire medical evidence of record available at the hearing level.

AT 1093.

Plaintiff complains that the ALJ did not ask Dr. Alpern whether plaintiff was able to

---

[7] Consulting examiner Dr. Jonathan Schwartz examined plaintiff in May 2016 and opined that he could lift and carry fifty pounds occasionally and twenty-five pounds frequently, stand and walk for four hours of an eight-hour day, sit without limitation, and frequently crouch. AT 1092, citing AT 805-54.

12

perform this level of work throughout the relevant seven-year period, despite evidence that plaintiff's bilateral knee impairment varied over time. The ALJ summarized the objective evidence of plaintiff's knee problems over that period: Plaintiff underwent right knee arthroscopy with debridement in February 2013. AT 1090; see AT 644, 645. Three years later, in July 2016, plaintiff was working at the Walmart warehouse, where he spent a lot of time on his knees without knee pads, lifting heavy pallets, and loading and unloading, and he sought treatment for left knee pain. AT 1090. In September and October 2016, exam findings with regard to both knees were largely normal except for decreased range of motion in the left knee and mild tenderness, with pain on weight bearing, causing no significant functional loss. AT 1090; see AT 960, 961, 984-94. Plaintiff's pain was treated with medications, physical therapy, and a brace. AT 961.

"Thereafter, there is a treatment gap," the ALJ noted, as plaintiff sought no treatment for knee problems for about two years. AT 1090; see AT 1787-88. In August 2018, plaintiff was taking Ibuprofen for pain and was interested in surgical intervention, but stated he was otherwise doing well and was back at the gym exercising. AT 1090; see 1787-88. In August 2019, plaintiff presented to a VA emergency room with worsening knee pain and swelling after an arthroscopic procedure in 2018. AT 1091; see 1981. The ER examination showed tenderness to palpation over the left knee with mild joint effusion, and plaintiff was prescribed medication. AT 1091; see AT 1984. At an orthopedic evaluation in August 2020, plaintiff reported worsening and persistent knee pain since his surgery in 2018. AT 1091; see AT 1978. Exam findings showed left knee range of motion stiff, with tenderness to palpation over the left knee and small effusion in the left knee. AT 1091; see AT 1979.

Unlike in Smith, ALJ did not rely on "a single medical opinion of [plaintiff's] general capacity over the entire period" to arrive at the physical RFC. The ALJ also considered the reports of three consultative examiners who examined plaintiff in 2015 (Dr. Dolores Leon), 2016 (Dr. Jonathan Schwartz), and 2017 (Dr. Clayton Hodges): All three opined that, despite plaintiffs' diagnoses and complaints of pain, he had the capacity to perform at least light work. AT 1092-93; see AT 576-77, 854, 1777. In addition, State non-examining physician Dr. G. Williams

13

opined in 2017 that plaintiff could perform light exertional work with a limit to frequent postural actions. AT 1092-93. The ALJ relied on these medical opinions issued over multiple years. along with Dr. Alpern's assessment of the overall record, writing in part:

> The opinions of the consulting examiners are supported by their physical exam findings, while those of the State Agency non-examining physician is supported by their review of the medical records. These opinions are supported by the good recovery from surgery, and minimal record of care sought thereafter for the right knee. With respect to the left knee, the evidence of a gap in treatment from September 2016 to August 2018, as well as his report of surgery without complications supports these opinions. Bilateral 2020 knee ex-rays showing very mild medial joint space narrowing bilateral also supports these opinions. They are consistent with the few objective findings of abnormalities related to the knees upon physical examination and in 2016 x-rays, as well as the claimant's own report that flares are occasional and managed with conservative treatment. . . . [H]is rather ordinary range of activities of daily living reviewed also supports these opinions.[8]

AT 1093.

Because Smith is distinguishable from the instant case, the court finds no error on this basis. The RFC for light work is adequately explained and grounded in substantial evidence.

### C. Subjective Symptom Testimony

Plaintiff next asserts that the ALJ improperly discounted his subjective symptom testimony. He argues that the ALJ's "rationale for rejecting Plaintiff's testimony are [sic] substantially similar to the reasons he gave for rejecting the opinions of Dr. Matto, Ardalan, Alpern, and McCray, i.e., his improvement with treatment and his activities. . . . The ALJ's rejection of Plaintiff's testimony is inadequate for the same reasons his rejection of [these] opinions are inadequate."

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an

---

[8] The ALJ noted that "plaintiff lives an active lifestyle, living with and parenting multiple children, engaged in one weekend a month active duty with the National Guard with no significant limitations on drills and other military exercises . . . [I]n one office visit, he reported his transportation was by bike, round trip 8 miles, and the use of public transportation." AT 1091; see also 1088 (summary of daily living activities).

14

explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); see also Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

Here, the ALJ considered objective evidence of mental and physical impairment, as well aggravating factors, medication, and functional restrictions. The ALJ also considered plaintiff's treatment history and daily activities. After a detailed and thorough review of these factors, the ALJ concluded as follows:

> [W]hile the record shows [plaintiff] may experience some level of

> pain and psychiatric symptoms, the weight of the evidence demonstrates his allegations are out of proportion to the objective findings upon physical examination and in laboratory findings shown in medical imagery of the knees, as well as an absence of imaging of the back. They are also out of proportion to the objective findings in the mental status examinations. The record shows overall that his physical symptoms are limited and do respond to conservative treatment which reduces limitations; that mental symptoms are controllable and do not substantially diminish his capacities to sustain a wide range of activities. Overall, the allegations of severely intense, persistent and limiting symptoms are inconsistent with the medical evidence of record and other evidence of record as a whole[.]

AT 1096; see AT 1088, 1091 (daily activities).

As with the challenged medical opinions, the undersigned finds that the ALJ used proper process and provided proper reasons, supported by substantial evidence, in evaluating the subjective symptom testimony. Therefore, the court defers to the ALJ's discretion on this issue.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is granted;

3. Judgment is entered for the Commissioner.

Dated: September 20, 2022

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/maldonado0644.bothssidib.ckd.ss